

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00333-CR

Ray Tomas **RODRIGUEZ ORTIZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CR6676
Honorable Michael E. Mery, Judge Presiding

Opinion by:      Lori Massey Brissette, Justice

Sitting:         Lori I. Valenzuela, Justice
                 Lori Massey Brissette, Justice
                 H. Todd McCray, Justice

Delivered and Filed: August 27, 2025

AFFIRMED

Following a jury trial, appellant Ray Tomas Rodriguez Ortiz was convicted of two counts of aggravated sexual assault of a child under fourteen, and three counts of sexual assault of a child, for repeatedly sexually assaulting his step-sister over a two-year period. On appeal, Ortiz presents the following issues: (1) the trial court abandoned its neutral and detached role in violation of his right to due process; (2) he received ineffective assistance of counsel; and (3) the trial court abused its discretion by admitting video evidence during the punishment phase of trial that was irrelevant,

cumulative, and more prejudicial than probative. After reviewing the record and the parties' briefing, we affirm.

## BACKGROUND

On February 20, 2021, the victim's mother contacted law enforcement to report that Ortiz had sexually assaulted the victim, Ortiz's step-sister. At the time, the victim was approximately fifteen years old and Ortiz was approximately twenty-two years old. Officer Michelle Garriffa responded to the service call, arriving at their home and interviewing the victim's mother, the victim, and Ortiz. Ortiz was later indicted on two counts of aggravated sexual assault of a child under fourteen, three counts of sexual assault of a child, and one count of indecency with a child by contact. A jury trial was conducted as to both guilt and punishment. During the guilt/innocence phase, the jury heard testimony from several people including: the victim; her mother; Officer Garriffa; Robert Sailors, the State's expert in the field of forensic serology, DNA, and forensic science; and Erik Mata, the State's expert in the field of child forensic interviews, child abuse, childhood behavior, and childhood trauma.

The victim testified that following the most recent instance of sexual assault, Ortiz ejaculated on her stomach and then used a bath towel to wipe himself. She testified Ortiz then threw her the towel, which she used to wipe Ortiz' semen off her stomach. Sailors, the State's forensic DNA expert, testified he tested cuttings from the towel against a buccal swab of Ortiz and concluded the towel contained DNA that was consistent with originating from the victim, and the towel also contained DNA that was consistent with originating from Ortiz.[1]

---

[1] Sailors testified there was a one in thirty-nine octillion chance that Ortiz's DNA was not on the towel and a one in 1.6 octillion chance that the victim's DNA was not on the towel.

After the jury found Ortiz guilty of two counts of aggravated sexual assault of a child under fourteen and three counts of sexual assault of a child, the punishment phase proceeded, and then Ortiz was sentenced to sixty years imprisonment with a $10,000 fine for the first count, forty-five years imprisonment with no fine for the second count, twenty years imprisonment with no fine for the third and fifth counts, and twenty years imprisonment with a $10,000 fine for the fourth count. Ortiz later filed a motion for new trial, which the trial court denied. Ortiz timely appealed.

## DUE PROCESS RIGHT TO A NEUTRAL ARBITER

In his first issue, Ortiz contends the questions and comments made by the trial court during two separate exchanges constitute reversible error. Both exchanges occurred without the jury present. The first exchange occurred during the guilt/innocence phase of trial, when a hearing was conducted to determine whether Officer Garriffa qualified as an outcry witness. The trial judge asked Officer Garriffa a series of questions to ascertain whether Officer Garriffa was the first person to whom the victim disclosed the sexual assault. Ortiz alleges the trial court improperly disregarded the witness's initial responses and improperly led the witness, coaxing answers to support the State's position that Officer Garriffa was a proper outcry witness. The second exchange occurred during the punishment phase of trial, when Ortiz's counsel raised a hearsay objection before Officer Brandon Prater could testify regarding statements made to him by Ortiz's ex-girlfriend, and the State countered that the testimony would fall under the excited utterance exception. The jury was excused, and then the trial judge asked Officer Prater a series of questions to determine whether the excited utterance exception applied, concluding it did. On appeal, Ortiz asserts that during both exchanges, the trial court abandoned its neutral and detached role in violation of his right to due process.

**A.  Applicable Law**

Both the United States Constitution and the Texas Constitution prohibit an accused from being deprived of life, liberty, or property, without the due process of law. U.S. CONST. amend. V, XIV; TEX. CONST. art. I, § 19. In the context of a trial, "[d]ue process requires a neutral and detached body or officer." *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). A trial judge is still "permitted to directly question witnesses, including a defendant, when seeking information to clarify a point." *Hunter v. State*, 691 S.W.3d 247, 251 (Tex. App.—Dallas 2024, no pet.); *see In re R.P.*, 37 S.W.3d 76, 79 (Tex. App.—San Antonio 2000, no pet.). This is permissible when the judge asks such questions with "an impartial attitude." *Brewer v. State*, 572 S.W.2d 719, 721 (Tex. Crim. App. 1978). Nevertheless, in asking questions the judge must not become "an advocate in the adversarial process and los[e] the neutral and detached role required for the fact finder and the judge." *Moreno v. State*, 900 S.W.2d 357, 359 (Tex. App.—Texarkana 1995, no pet.). A trial judge's remarks "only in the rarest circumstances evidence the degree of favoritism or antagonism required" to support a finding of bias or partiality. *Gaal v. State*, 332 S.W.3d 448, 454 (Tex. Crim. App. 2011) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)) (internal quotation marks omitted). To determine whether a judge's bias or prejudice denied the defendant due process, we review the entire record. *Tovar v. State*, 619 S.W.3d 783, 792 (Tex. App.—San Antonio 2020, pet. ref'd).

Unfavorable rulings alone will not support a claim of bias, and generally, neither will remarks of a judge during the course of a trial "that are critical or disapproving of, or even hostile to counsel, the parties, or their cases." *Trung The Luu v. State*, 440 S.W.3d 123, 129 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Avilez v. State*, 333 S.W.3d 661, 675 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Further, "opinions based upon evidence received in judicial

proceedings do not ordinarily raise questions about impartiality." *Quinn v. State*, 958 S.W.2d 395, 403 (Tex. Crim. App. 1997). Rather, bias is shown by a disposition or opinion that is "wrongful or inappropriate . . . because it is undeserved, or because it rests upon knowledge that the [judge] ought not to possess . . . or because it is excessive in degree." *Abdygapparova v. State*, 243 S.W.3d 191, 198 (Tex. App.—San Antonio 2007, pet. ref'd) (quoting *Liteky*, 510 U.S. at 550) (internal quotation marks omitted). "Absent a clear showing of bias, a trial court's actions will be presumed to have been correct." *Brumit*, 206 S.W.3d at 645.

"It is not improper for a trial judge to interject in order to correct a misstatement or misrepresentation of previously admitted testimony." *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). "A trial judge has broad discretion in maintaining control and expediting the trial" including by making comments "aimed at clearing up a point of confusion." *Id.*

### B. Application

As a preliminary matter, we note that Ortiz concedes he did not object to the trial court's questioning of the witnesses. The State argues Ortiz thus failed to preserve this issue. Ortiz nevertheless asserts on appeal that error was not waived because the questions and comments amounted to structural error. Based on this assertion, Ortiz argues he was not required to object to preserve his complaint for appeal.

Ordinarily, a complaint regarding improper judicial comments must be preserved at trial. TEX. R. APP. P. 33.1; *Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013); *Jasper*, 61 S.W.3d at 420–21. However, an exception to the general rule exists in cases where a trial court's comments amount to fundamental error. *See* TEX. R. EVID. 103(e) ("In criminal cases, a court may take notice of a fundamental error affecting a substantial right, even if the claim of error was not properly preserved."); *Unkart*, 400 S.W.3d at 99.

Regardless of whether Ortiz's issue is one that he could not forfeit by inaction,[2] Ortiz's issue fails on the merits. *See Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020) (stating appellant's bias arguments failed on the merits and not addressing appellant's assertion that judge's conduct was fundamental error not requiring objection), cert. denied, 142 S. Ct. 436 (2021); *Brumit*, 206 S.W.3d at 644–45 (declining to decide whether objection was required for bias argument because record did not reflect partiality of the trial court).

Regarding the first exchange, the record shows the trial court did not abandon its neutral and detached role and instead questioned Officer Garriffa to "seek information" and "clarify a point" to determine whether Officer Garriffa qualified as an outcry witness. *Moreno*, 900 S.W.2d at 359; *see Brewer*, 572 S.W.2d at 721; *Hunter*, 691 S.W.3d at 251; *R.P.*, 37 S.W.3d at 79. On appeal, Ortiz asserts the trial court improperly disregarded the witness's initial responses and improperly led the witness, coaxing answers to support the State's position that Officer Garriffa was a proper outcry witness. But, Officer Garriffa's initial response was ambiguous and the trial court's clarifying questions were therefore appropriate to its neutral and detached role. Officer Garriffa initially stated at the outcry hearing, "So when she [the victim] came out . . . I asked her if she could explain to me what had happened because her mom had already told me she had been raped, and that was it." It was initially unclear whether Officer Garriffa was merely explaining to

---

[2] We note that with some exceptions, a defendant in a criminal case forfeits error, even constitutional error, when she fails to make a timely objection or fails to request proper relief. *See Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), overruled on other grounds by *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997); *Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986). In *Marin*, the Texas Court of Criminal Appeals recognized two "relatively small" categories of errors—violations of "rights which are waivable only" and denials of "absolute systemic requirements"—that may be addressed on appeal regardless of whether an objection was made in the trial court. *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002). The Texas Court of Criminal Appeals has recognized that certain restraints on the comments of a judge fall within the category of absolute rights. *See id.* at 888–89 n.72 (citing *Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000) and noting it could not agree on the basis of this requirement as four judges held that the trial judge's comments tainted the presumption of innocence and were fundamental error of constitutional dimension and a fifth judge held that the trial judge's comments violated the right to an impartial judge).

the court the reason she asked the victim what happened, or whether Officer Garriffa was testifying that she told the victim her mother had already told Garriffa the victim had been raped. The State and then the trial court asked appropriate clarifying questions, and Officer Garriffa clarified she did not tell the victim that her mom had told Garriffa the victim had been raped before the victim made an outcry to Garriffa. Based on Garriffa's testimony, the trial court determined Officer Garriffa was a proper outcry witness to sexual assault of a child younger than eighteen years of age. *See* TEX. CODE CRIM. PRO. art. 38.072.

The record does not show the trial court coaxed answers from Officer Garriffa to support the State's position. Instead, it shows the trial court's clarifying questions occurred after the State had already asked Officer Garriffa, "Just to clarify, did you tell [the victim] your mom already told me that you'd been raped?" to which Garriffa responded, "No." The record shows the trial court asked clarifying questions to get crystal clear on Officer Garriffa's initial statements to the victim, so it could make the appropriate ruling. *See Moreno*, 900 S.W.2d at 359; *Hunter*, 691 S.W.3d at 251; *R.P.*, 37 S.W.3d at 79; *Jasper*, 61 S.W.3d at 421 ("A trial judge has broad discretion in maintaining control and expediting the trial" including by making comments "aimed at clearing up a point of confusion."). Reviewing the entire record, *see Tovar*, 619 S.W.3d at 792, we conclude there was no clear showing of bias during this exchange, and we therefore must presume the trial court's actions were correct. *Brumit*, 206 S.W.3d at 645.

The record also shows the trial court did not abandon its neutral and detached role during the second exchange Ortiz cites on appeal. During the punishment phase of trial, Officer Prater testified that following a report of a sexual assault, he was dispatched to an apartment, where he interviewed Ortiz's ex-girlfriend regarding her alleged sexual assault by Ortiz. Officer Prater testified, "Her hands were trembling, her voice was cracking when I was speaking to her. It was

obvious she was in distress, something had happened. Something pretty bad had just happened." Then, before Officer Prater could testify regarding statements made to him by Ortiz's ex-girlfriend, Ortiz's counsel raised a hearsay objection and the State countered that the testimony would fall under the excited utterance exception. The jury was excused, and then the trial judge asked Officer Prater a series of questions to determine whether the excited utterance exception applied, concluding it did.

On appeal, Ortiz highlights that the trial court concluded the exchange by stating, "I did the State's job because I'm trying to move." But reviewing the entire record, *see Tovar*, 619 S.W.3d at 792, we conclude there was no clear showing of bias during this exchange, and we therefore must presume the trial court's actions were correct. *See Brumit*, 206 S.W.3d at 645. "A trial judge has broad discretion in maintaining control and expediting the trial." *Jasper*, 61 S.W.3d at 421. The record shows the trial judge was exercising this broad discretion by questioning Officer Prater to establish whether the excited utterance exception would apply to his testimony about what Ortiz's ex-girlfriend told him. Officer Prater had already testified to the jury that Ortiz's ex-girlfriend was trembling, her voice was cracking, and it was "obvious she was in distress." Officer Prater then testified without the jury present that according to Ortiz's ex-girlfriend, after the sexual assault happened, Ortiz pushed her off the steps to his house and she then returned to her apartment ten minutes away. After the trial court ruled the testimony was admissible under the excited utterance exception, the jury returned and Ortiz renewed his objection. The trial court explained it asked clarifying questions so it could expeditiously make the appropriate ruling on the hearsay objection. *See Moreno*, 900 S.W.2d at 359; *Brewer*, 572 S.W.2d at 721; *Hunter*, 691 S.W.3d at 251; *R.P.*, 37 S.W.3d at 79.

We conclude the trial court maintained its neutral and detached role in both exchanges in accordance with Ortiz's right to due process. *See Moreno*, 900 S.W.2d at 359; *Brumit*, 206 S.W.3d at 645. Furthermore, the trial court's questions and comments, made outside the presence of the jury and without objection from Ortiz, did not rise "to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury." *Jasper*, 61 S.W.3d at 421. Therefore, in both exchanges, even "if there were any residual harm, it would have been cured by a timely instruction to disregard the specific comments that appellant found objectionable." *Unkart*, 400 S.W.3d at 102 (concluding appellant was not entitled to a mistrial and any lesser remedy was forfeited by appellant's failure to object and request an instruction to disregard). Finally, the trial court's ultimate rulings in the State's favor following the outcry witness hearing and the hearsay hearing do not support a claim of bias. *See Luu*, 440 S.W.3d at 129; *Avilez*, 333 S.W.3d at 675. We overrule Ortiz's first issue.

INEFFECTIVE ASSISTANCE OF COUNSEL

In his second point of error, Ortiz contends he received ineffective assistance because his trial counsel failed to consult a forensic serology and DNA expert, engaged in limited voir dire examination and cross-examination of the State's forensic serology and DNA expert, and failed to introduce testimony from his own forensic serology and DNA expert.

## A. Standard of Review and Applicable Law

We review an ineffective assistance of counsel claim under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, "a defendant must demonstrate two things: deficient performance and prejudice." *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). To establish deficient performance, a defendant must prove by a preponderance of the evidence his counsel's performance fell below an objective standard of

reasonableness. *Prine v. State*, 537 S.W.3d 113, 116-17 (Tex. Crim. App. 2017). We apply a highly deferential level of scrutiny when reviewing counsel's performance. *Mata v. State*, 226 S.W.3d 425, 428 (Tex. Crim. App. 2007). A defendant must overcome a "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance" and "constituted sound trial strategy." *Prine*, 537 S.W.3d at 117 (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (internal quotation marks omitted)).

To overcome this presumption, "'[a]ny allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness.'" *Id.* (alteration in original) (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). The record in a direct appeal is often insufficient to establish an ineffective assistance claim, and when faced with an undeveloped record, we should conclude ineffective assistance occurred only if counsel's conduct is "'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Failure to show either deficient performance or prejudice defeats an ineffective assistance of counsel claim. *Thompson*, 9 S.W.3d at 813.

## B. Application

Ortiz first contends he received ineffective assistance because his trial counsel failed to consult a forensic serology and DNA expert. But, the record does not establish whether Ortiz's trial counsel failed to consult such an expert. We cannot conclude trial counsel's performance was deficient or resulted in prejudice on this basis. *See Prine*, 537 S.W.3d at 117 ("Any allegation of

ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness."); *Brown v. State*, 129 S.W.3d 762, 767 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("We will not assume that counsel did not investigate a defense when the record is merely silent as to the depth of counsel's investigation.").

Second, Ortiz contends he received ineffective assistance because his trial counsel engaged in limited voir dire examination and cross-examination of Robert Sailors, the State's forensic serology and DNA expert. Ortiz has failed to adequately brief this complaint, failing to explain how trial counsel's examination constituted deficient performance or prejudiced Ortiz. TEX. R. APP. P. 38.1. Therefore, Ortiz has waived this complaint on appeal. *See Swearingen v. State*, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003). Furthermore, the record does not show that the questions Ortiz's counsel asked or failed to ask of Sailors were so outrageous that no competent attorney would have so done. *See Prine*, 537 S.W.3d at 117. Because "the record is silent as to the reasons for trial counsel's conduct, he is entitled to 'the benefit of the doubt,' and we must assume that he 'had a strategy if any reasonably sound strategic motivation can be imagined.'" *Rivera v. State*, 708 S.W.3d 732, 744 (Tex. App.—San Antonio 2024, pet. ref'd) (quoting *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021)). Here, we can imagine Ortiz's counsel may have sought to avoid further questioning which could have emphasized to the jury the very high likelihood Ortiz's DNA was present on the towel.

Third, Ortiz contends he received ineffective assistance because his trial counsel failed to call a forensic serology and DNA expert to testify. But "because the ineffective assistance claim is raised on direct appeal, trial counsel has not had an opportunity to respond," and the trial record is silent as to why Ortiz's trial counsel failed to call such an expert. *See Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003) (holding counsel's failure to present medical expert

testimony did not render counsel's performance deficient). Because we cannot determine from the record whether Ortiz's attorney consulted with a forensic serology and DNA expert—or, if not, why he chose not to present a counter-expert at trial—we cannot deem the failure to present such an expert witness objectively unreasonable. *See id*. Since the victim testified that the DNA on the towel came from Ortiz, and the State's expert concluded there was a one in thirty-nine octillion chance that Ortiz's DNA was not on the towel, Ortiz has not overcome the strong presumption that his trial counsel's decision not to present a DNA expert was reasonable and "constituted sound trial strategy." *See Prine*, 537 S.W.3d at 117.

Because Ortiz's attorney's challenged conduct was not "so outrageous that no competent attorney would have engaged in it," we overrule Ortiz's ineffective assistance claim. *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013) (quoting *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012)) (internal quotation marks omitted).

## ADMISSION OF VIDEO EVIDENCE

In his third point of error, Ortiz argues the trial court abused its discretion by admitting video evidence during the punishment phase of trial that he alleges was irrelevant, cumulative, and more prejudicial than probative. The twenty-four second ring camera video showed Ortiz grabbing the dog he shared with his ex-girlfriend by the neck, yelling at the dog, and shoving the dog to the ground. The trial court admitted the video evidence, overruling Ortiz's objections at trial that the video was irrelevant, cumulative, and more prejudicial than probative. The State played the video at trial during its examination of Ortiz's ex-girlfriend, who testified that Ortiz abused their dogs, including by choking them, dragging them on the floor, and punching them.

## A. Standard of Review and Applicable Law

We review a trial court's decision to admit evidence of an extraneous offense during the punishment phase of trial for an abuse of discretion. *See Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). We will affirm if the trial court's decision is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

Article 37.07 of the Texas Code of Criminal Procedure provides that, during the punishment phase of trial,

> evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. art. 37.07 § 3(a)(1).

The admissibility of evidence during the punishment phase of a non-capital trial "is a matter of policy, including the policy of giving complete information to the jury to allow it to tailor an appropriate sentence for the defendant." *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Thus, evidence that is "relevant to sentencing" is simply evidence that "is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case." *Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008) (quoting *Ellison v. State*, 201 S.W.3d 714, 719 (Tex. Crim. App. 2006)).

Texas Rule of Evidence 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. Under this rule, "it is presumed that the probative value of relevant evidence exceeds any danger

of unfair prejudice." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009). It is therefore "the objecting party's burden to show that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *Tucker v. State*, 456 S.W.3d 194, 207 (Tex. App.—San Antonio 2014, pet. ref'd). Rule 403 "envisions exclusion of evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer*, 296 S.W.3d at 568 (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)).

When conducting a rule 403 analysis, courts balance "the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; [and] (4) the proponent's need for the evidence." *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). "When the trial court exercises its discretion not to exclude the evidence by finding that the probative value of the evidence is not outweighed by the danger of unfair prejudice, we give deference to this decision." *Tucker*, 456 S.W.3d at 206 (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). "Therefore, in determining whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, we do not conduct a de novo review and we 'should reverse the judgment of the trial court rarely and only after clear abuse of discretion.'" *Id.* (quoting *Moses*, 105 S.W.3d at 627).

### B. Application

During the punishment phase of trial, Ortiz's ex-girlfriend testified Ortiz abused their dogs, and she further testified Ortiz engaged in other extraneous crimes or bad acts, including sexually assaulting her at a park. The video footage supported her testimony regarding animal abuse and supported her credibility as a witness. The video was relevant and probative to Ortiz's history of

and propensity for violence and thus the jury's assessment of the appropriate punishment. Therefore, the trial court did not abuse its discretion by concluding the evidence was relevant, since the trial court could have reasonably concluded the video was "helpful to the jury in determining the appropriate sentence" here. *Sims*, 273 S.W.3d at 295; *see* TEX. CODE CRIM. PROC. art. 37.07 § 3(a)(1) ("[E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing" including evidence of character and extraneous crimes or bad acts); *Mata*, 226 S.W.3d at 432.

Ortiz has not met his burden to show that "the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *Tucker*, 456 S.W.3d at 207. The probative value of the evidence was significant, the time needed to develop the evidence was minimal, and Ortiz has not shown the evidence impressed the jury "in some irrational, yet indelible, way." *Erazo*, 144 S.W.3d at 489. The record does not show a clear disparity between the degree of prejudice of the video evidence and its probative value. *See Hammer*, 296 S.W.3d at 568. The trial court did not abuse its discretion by admitting the video evidence during the punishment phase. *See Tucker*, 456 S.W.3d at 206. We overrule Ortiz's third issue.

## CONCLUSION

Based on the foregoing, we affirm the trial court's judgment of conviction.

Lori Massey Brissette, Justice

DO NOT PUBLISH